1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALOHA JOHNSON, ALPHABIOTIC LIFE CENTER, PIERCE COUNTY ASSESSOR, GINA CAMPBELL, ERIN JOHNSON,<br><br>Defendants. | CASE NO. 3:14-cv-05190-RJB<br><br>ORDER GRANTING:<br><br>(1) PLAINTIFF'S MOTION TO AMEND UNITED STATES' AMENDED COMPLAINT;<br><br>(2) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ALOHA JOHNSON; AND<br><br>(3) PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST ERIN JOHNSON, GINA CAMPBELL, AND ALPHABIOTIC LIFE CENTER |

11

12

13

14

15

16

17

18

19

20

This matter comes before the Court on the government's Motion for Summary Judgment Against Aloha Johnson (Dkt. 66) and Default Judgment Against Erin Johnson, Gina Campbell, and Alphabiotic Life Center (*Id.*) and on the government's Motion to Amend United States'

21

22

23

24

1  Amended Complaint (Dkt. 67). The Court has considered the pleadings filed in support of, and in
2  opposition to, the motions and the file herein.

3  PROCEDURAL HISTORY

4  Proceeding on a first amended complaint, the government seeks to reduce to judgment
5  unpaid federal income tax assessments against Mr. Clyde Johnson ("Clyde Johnson") and to
6  foreclose the related federal tax liens. Dkt. 14.

7  On February 24, 2015, the government filed a motion for summary judgment against Ms.
8  Aloha Johnson ("Aloha Johnson"), Clyde Johnson's widow, and a motion for default judgments
9  against Clyde Johnson's alleged surviving heirs, Ms. Erin Johnson and Ms. Gina Campbell, and
10 his purported entity, Alphabiotic Life Center. Dkt. 66.

11 In addition, on March 12, 2015, the government filed a motion to amend its first amended
12 complaint. Dkt. 67. Neither defendant has filed any objections to the government's motion to
13 amend.

14 On March 16, 2015, Aloha Johnson filed a response to the government's motion for a
15 summary judgment (Dkt. 68), and on March 20, 2015, the government filed a reply (Dkt. 71).

16 RELEVANT FACTS

17 Aloha Johnson and Clyde Johnson met in 1982. Dkt. 66-1, at 8. In August 1987, after
18 they had been dating for five years, they married. *Id.*, at 9. Shortly before they married, on March
19 25, 1987, Clyde Johnson purchased the property, which the government seeks to enforce its tax
20 liens against, located at 31708 82nd Avenue East, Eatonville, Washington 98328 ("the Eatonville
21 Property") from Ms. Edith Lewis for $119,000.00, taking title in his name only. *Id.*, at 33, 41, 64,
22 75. He signed an installment promissory note for $108,000.00 payable to Ms. Lewis and secured

23
24

by a deed of trust. *See Id.*, at 76-77. Aloha Johnson did not sign the note (Dkt. 69, at 2); nor did she contribute any funds towards to the purchase (Dkt. 66-1, at 34).

They married at the Eatonville Property and lived there together until May 2012 when Clyde Johnson passed away. Dkt. 66-1, at 10. During their marriage, Clyde Johnson paid off the Eatonville Property with the money from his chiropractic practice (*Id.*, at 34). Although Aloha Johnson alleges that she contributed approximately $12,000.00 she had inherited from her father towards a remodeling project Clyde Johnson performed on the property (*Id.*, at 42-43; Dkt. 69, at 2), she remembers no details and has no documentation for the contribution (Dkt. 66-1, at 42-43).

On June 10, 1999, even though Aloha Johnson had no recorded interest in the Eatonville Property, she executed a quit claim deed ("Quitclaim Deed"), transferring any interest she may have had to Clyde Johnson "as his separate estate." *Id.*, at 70. Aloha Johnson stated in her declaration that Ms. Lewis wanted the balance on the note paid, so Clyde Johnson obtained a loan from a bank to pay the balance, eventually paying off the loan in 2012. Dkt. 69, at 2. In addition, Aloha Johnson stated in her declaration that she had no involvement in the refinance transaction, but that she was asked to sign the Quitclaim Deed, which she claims was "somehow necessary for the refinance to go through." *Id.*, at 2-3. She stated that she had "no independent recollection of actually signing the deed," conceding that the signature on the Quitclaim Deed was hers. *Id.*, at 2. Further, the real estate tax affidavit filed with the Quitclaim Deed states that the "explanation" for the transaction is to "separate community property." Dkt. 66-1, at 72.

Clyde Johnson supported the family financially with his chiropractic practice. *Id.*, at 12; Dkt. 69, at 3. Although he worked as a chiropractor between 1994 and 2003 (Dkt. 66-1, at 12), he failed to pay his tax liabilities for at least these years (Dkt. 66-1, at 100-109; Dkt. 66-2, at 2-

66) as he appears to have ascribed to unconventional beliefs about the federal tax system (Dkt. 66-2, at 135-148). In September 2000, unable to bring Clyde Johnson into voluntary compliance, the IRS started issuing notices of deficiencies to him. Dkt. 66-3; Dkt. 66-4, at 2-38. In addition, between November 2002 and March 2012, the IRS made several assessments against Clyde Johnson for unpaid taxes, penalties, and interest for the years in question. Dkt. 66-2, at 2-66. Aloha Johnson alleges that Clyde Johnson excluded her from any business and related matters, including the purchase of the Eatonville Property and income taxes. Dkt. 69, at 3.

On December 1, 2000, a few months after he received his first notice of deficiency, Clyde Johnson transferred his interest in the Eatonville Property to a new purported entity Alphabiotic Life Center ("Alphabiotic"). Dkt. 66-1, at 66. This transfer was a "Gift…for love and affection as consideration…" (*Id.*, at 66), involving no monetary consideration (*Id.*, at 68). Aloha Johnson stated in her deposition that Alphabiotic was a technique of adjustment Clyde Johnson intended to practice following his retirement. *Id.*, at 26. Neither corporate charter, bylaws, articles of incorporation, nor any other document related to Alphabiotic was ever located. *Id.*, at 30. Nor was Aloha Johnson aware at the time of her deposition whether Alphabiotic had any operations, managers, or annual meetings. *Id.*, at 31-31. In fact, she stated that "[Alphabiotic] hadn't done anything yet. That was just what [Clyde Johnson] was – from what I understood was going to be the name of his practice." *Id.*, at 32.

On October 10, 2007, the IRS recorded a Notice of Federal Tax Lien in Pierce County, Washington against the Eatonville Property for $288,937.42, securing Clyde Johnson's unpaid tax liabilities for the 1994-2003 tax years. *Id.*, at 79. Similarly, on August 1, 2008, the IRS recorded another Notice of Federal Tax Lien in Pierce County, Washington, for the same tax years against the Eatonville Property for $287,373.06, naming Alphabiotic "as nominee or alter

1   ego of Clyde B Johnson." *Id.*, at 84. Finally, between 2012 and 2014, the IRS re-filed notices as

2   to certain tax years, naming both Clyde Johnson and Alphabiotic. *Id.*, at 81-83, 85-86.

3        After the IRS referred Clyde Johnson's unpaid tax liabilities to the Department of Justice

4   and before the government initiated the present action, Clyde Johnson died. Dkt. 66, at 12.

5        In this action, the government seeks to collect Clyde Johnson's unpaid tax liabilities for

6   the 1994-2003 tax years by enforcing its liens against the Eatonville Property.

7                                                    DISCUSSION

8   **A.  Plaintiff's motion to amend first amended complaint**

9        On March 12, 2015, the government filed a motion to amend its first amended complaint

10  on the basis that it identified a drafting error therein. Dkt. 67. Specifically, the government states

11  that it erroneously listed a civil penalty assessed against Clyde Johnson for the 2008 tax year. *Id.*

12  The government seeks relief only as to the federal tax liens arising from Clyde Johnson's tax

13  liabilities, interest, and penalties for the 1994-2003 years. *Id.*

14       Neither defendant has filed any response to the government's motion to amend its first

15  amended complaint. The Court should consider such lack of response as an admission that the

16  motion has merit. *See* LCR 7(b). In addition, no apparent reason exists to deny leave to amend

17  such as undue delay, bad faith, or dilatory motive. *See Foman v. Davis*, 371 U.S. 178, 182

18  (1962). In fact, the government seeks to remove a basis for liability.

19       Nor has either defendant shown any prejudice resulting from such an amendment.

20       Accordingly, the Court should grant the government's motion to amend its first amended

21  complaint, which does not alter the Court's analysis on the government's motions for summary

22  and default judgments.

23  //

24

**B.  Plaintiff's motion for summary judgment**

The government argues that the Court should decree a sale of the Eatonville Property for the following reasons:

First, the government argues that it possesses valid federal tax liens against Clyde Johnson. Dkt. 66.

Second, the government argues that Aloha Johnson had no interest in the Eatonville Property on the dates of assessments so as to prelude the sale of the property. *Id*. The government argues that, under Washington community property law, Aloha Johnson acquired no interest in the Eatonville Property when she married Clyde Johnson because the character of property is determined at the date of acquisition. *Id*. More specifically, Clyde Johnson purchased the Eatonville Property several months before they married; accordingly, the government argues, the property remained his separate, not their community, property throughout their marriage. *Id*. Even if Aloha Johnson had acquired an interest in the Eatonville Property through their marriage, the government maintains that she no longer had any such interest when the government's tax liens arose because she had executed the Quitclaim Deed, transferring any interest she may have had in the Eatonville Property to Clyde Johnson "as his separate estate." *Id*.

Third, even if Aloha Johnson had an interest in the Eatonville Property, the government argues that it may still foreclose its liens against the entire property because Clyde Johnson's tax liabilities constitute their community debt. *Id*.

Finally, the government argues that the tax liens attach to the Eatonville Property, even though Clyde Johnson placed it in Alphabiotic's name, because Alphabiotic was Clyde Johnson's nominee or alter ego. *Id*.

1    In response, Aloha Johnson argues that she continuously possessed at least a one-half

2 interest in the Eatonville Property because they were in a "meretricious relationship" when Clyde

3 Johnson purchased the property. Dkt. 68. Although Aloha Johnson argues that she possessed "an

4 interest" in the property, she argues that she possessed no "community property" interest subject

5 to community debt. *Id.*

6    In addition, Aloha Johnson argues that the Quitclaim Deed lacks any "donative intent" to

7 constitute a gift of her existing interest in the Eatonville Property because she executed the

8 Quitclaim Deed only to facilitate the refinance transaction. *Id.* In support, Aloha Johnson cites

9 only to *In re Estate of Borghi*, 167 Wn. 2d 480 (2009), *as corrected* (2010), a case where the

10 court held that no presumption was created that the property acquired by one spouse before her

11 marriage transmuted from separate to community property when the deed was issued in both

12 spouses' names.

13    Even if the Quitclaim Deed can be interpreted as intending a transfer of community

14 property into separate property, Aloha Johnson argues that the Quitclaim Deed fails because she

15 (1) possessed no "community property" interest; and (2) lacked intent to gift the property and

16 even knowledge that she possessed any transferrable interest to form such intent. *Id.*

17    Further, Aloha Johnson argues that the tax liens do not attach to her interest in the

18 Eatonville Property because the IRS has never sought to hold her personally liable for the tax

19 liabilities in question. *Id.* In addition, Aloha Johnson argues that these tax liabilities do not

20 constitute community property debt because Clyde Johnson acquired the Eatonville Property

21 before they were married and she, therefore, had only an "equitable," and not a "community

22 property," interest in the Eatonville Property. *Id.* In support, Aloha Johnson cites *United States v.*

23 *Rodgers*, 461 U.S. 677 (1983), where the Supreme Court held that, under 26 U.S.C. § 7403, a

24

1  district court can order the sale of the home itself, not just the delinquent taxpayer's interest in

2  the property and that the nondelinquent spouse is entitled, as part of the distribution of proceeds,

3  to so much of the proceeds as represents complete compensation for the loss of such spouse's

4  separate interest.

5  Finally, Aloha Johnson argues that the Court should exercise its equitable power to deny

6  foreclosure of the tax liens because the record is devoid of any evidence of the factors the Court

7  should consider before authoring such a sale. *Id.*

8  In reply, the government argues that the evidence is insufficient to establish a

9  "meretricious" relationship between Aloha Johnson and Clyde Johnson because cohabitation

10  alone does not establish "meretricious" relationship, more recently referred to as a "committed

11  intimate relationship." Dkt. 71.

12  Even if Aloha Johnson and Clyde Johnson had a "meretricious" relationship, the

13  government argues that it is entitled to enforce the liens because (1) the "committed intimate

14  relationship" doctrine was established to equitably distribute property following a termination of

15  a committed relationship where partners never formally married, not to divide property in a

16  federal lawsuit involving tax liens where neither partner holds title to the property in question;

17  (2) the "committed intimate relationship" doctrine applies only to, unlike here, a jointly-acquired

18  property; and (3) "committed intimate relationship" doctrine (a) does not vest Aloha Johnson

19  with a property interest insulated from any federal tax liens where a commensurate community

20  property interest would not be, and (b) at most, would give Aloha Johnson a "community

21  property-like interest" subject to community debts. *Id.*

22  In addition, the government argues in its reply that the Quitclaim Deed severed any

23  interest Aloha Johnson may have had in the Eatonville Property regardless of her alleged intent.

24

*Id*. Specifically, the government argues that Aloha Johnson has pointed to no ambiguity in the Quitclaim Deed justifying turning to extrinsic evidence such as her "self-serving declaration that she now recalls lacking donative intent." *Id*. (internal citations omitted). Even if the Court considers extrinsic evidence, the government argues that such evidence, in fact, shows that the Quitclaim Deed severed any interest Aloha Johnsons may have had in the property because the real estate tax affidavit filed with the Quitclaim Deed states that the "explanation" for the transaction was to "separate community property." *Id*.

Finally, the government argues that the equities in this case favor the government, not Aloha Johnson. *Id*.

1.   *Summary judgment standard*

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

1   *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

2   *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

3        The determination of the existence of a material fact is often a close question. The court

4   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

5   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

6   *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

7   of the nonmoving party only when the facts specifically attested by that party contradict facts

8   specifically attested by the moving party. The nonmoving party may not merely state that it will

9   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

10   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

11   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

12   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

13        In this case, the Court should conclude that the government is entitled to a summary

14   judgment as a matter of law because no genuine issues of material fact exist as to (1) the validity

15   of the liens in question; (2) Clyde Johnson's requisite interest in the Eatonville Property; and (3)

16   the lack of Aloha Johnson's requisite interest in the Eatonville Property.

17      *2.  The validity of the tax liens in question*

18      Under 26 U.S.C. § 7403(a):

19      "In any case where there has been a refusal or neglect to pay any tax, or to discharge any

20         liability in respect thereof, whether or not levy has been made, the Attorney General or
his delegate, at the request of the Secretary, may direct a civil action to be filed in a
district court of the United States to enforce the *lien of the United States* under this title

21         with respect to such tax or liability or to subject any property, of whatever nature, of the
delinquent, or in which he has any right, title, or interest, to the payment of such tax or

22         liability."

23

24

1  (emphasis added). As a general matter, the "lien of the United States" is created by 26 U.S.C. §

2  6321, which provides:

> "If any person liable to pay any tax neglects or refuses to pay the same after demand, the
> amount (including any interest, additional amount, addition to tax, or assessable penalty,
> together with any costs that may accrue in addition thereto) shall be a lien in favor of the
> United States upon all property and rights to property, whether real or personal,
> belonging to such person."

6  *Rodgers*, 461 U.S. at 681-82. Further, such a lien "shall arise at the time the assessment is made

7  and shall continue until the liability for the amount so assessed (or a judgment against the

8  taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of

9  time. 26 U.S.C. § 6322.

10          Here, in the form of the Certificates of Official Record and/or IRS Forms 4340, the

11  government has made *a prima facie* showing that it possesses valid tax liens against Clyde

12  Johnson. Dkt. 66-2, 1-68. *See Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993) (IRS

13  Form 4340 provides at least presumptive evidence that a tax has been validly assessed under §

14  6203). Aloha Johnson has failed to set forth any evidence controverting the government's

15  position on this issue.

16          Accordingly, the Court should conclude that no genuine issues of material fact exist as to

17  the validity of the tax liens in question.

18      *3.   Clyde Johnson's interest in the Eatonville Property at the time of assessments*

19          Aloha Johnson has not presented any controverting evidence that Clyde Johnson had an

20  interest in the Eatonville Property when the IRS assessed his tax liabilities between November

21  2002 and March 2012. Although Clyde Johnson transferred the Eatonville Property to

22  Alphabiotic in December 2001, the government has presented sufficient evidence to show that

23  Alphabiotic acquired the Eatonville Property as Clyde Johnson's nominee or alter ago. *See*

24

1   *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013) (citing *G.M. Leasing Corp.*

2   *v. United States,* 429 U.S. 338, 350–51 (1977)) (§ 6321 applies to all property of a taxpayer,

3   including property that is held by a third party as the taxpayer's nominee or alter ego).

4          Specifically, the government has shown as follows: (1) Alphabiotic appears to have paid

5   no consideration for the Eatonville Property other than "love and affection"; (2) Clyde Johnson

6   placed the Eatonville Property in Alphabiotic's name just a few months after the IRS issued its

7   first notice of deficiency; (3) Clyde Johnson appears to have closely controlled Alphabiotic, a

8   business he envisaged for his solo practice following his retirement; and (4) after Clyde Johnson

9   placed the Eatonville Property in Alphabiotic, he continued to possess, and enjoy the benefits of,

10  the property. *See United States v. Smith*, C11-5101 RJB, 2012 WL 1977964, at *5

11  (W.D.Wash.2012) (citing *United States v. Black,* 725 F.Supp.2d 1279, 1291–92

12  (E.D.Wash.2010); *Sharp Management,* LLC, 2007 WL 1367698, at *3 (W.D.Wash.2007)).

13         Significantly, Aloha Johnson has presented no evidence controverting the government's

14  *prima facie* case that Alphabiotic acquired the Eatonville Property as Clyde Johnson's nominee

15  or alter ago. In addition, no corporate charter, bylaws, articles of incorporation, or any other

16  related document was ever located. Dkt. 66-1, at 30. Nor was Aloha Johnson aware at the time of

17  her deposition whether Alphabiotic had any operations, managers, or annual meetings. *Id.*, at 31-

18  32. In short, Aloha Johnson has failed to controvert the government's position that the liens in

19  question encumber the Eatonville Property.

20         Accordingly, even if Aloha Johnson had an interest in the Eatonville Property when the

21  IRS assessed Clyde Johnson's liabilities, the government may enforce the liens in question by

22  selling the entire property. *See Rodgers*, 461 U.S. at 693-94 ("We must read [26 U.S.C. § 7403]

23  to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the

24

1   entire property (as long as the United States has any "claim or interest" in it), and the recognition

2   of third-party interests through the mechanism of judicial valuation and distribution.").

3          In this case, the issue is whether Aloha Johnson has shown that she had any interest in the

4   Eatonville Property requiring judicial valuation or distribution. As discussed below, the Court

5   should conclude that she has failed to satisfy this burden.

6          *4.   Aloha Johnson's interest in the Eatonville Property at the time of assessments*

7          Aloha Johnson has failed to show that she had any interest in the Eatonville Property

8   when the IRS made the assessments in question. Although disputed issues of fact exist as to

9   whether Aloha Johnson and Clyde Johnson had been in a "meretricious relationship" before they

10  married, the Court need not reach this issue. Even if Aloha Johnson had an interest in the

11  Eatonville Property, the Court should conclude that, as a matter of law, she transferred any

12  interest she may have had in the Eatonville Property to Clyde Johnson when, on June 10, 1999,

13  she executed the Quitclaim Deed.

14         Although Aloha Johnson argues that she lacked the allegedly requisite "donative intent"

15  to gift her interest in the Eatonville Property through a quit claim deed, she has provided no

16  support for this proposition. *In re Estate of Borghi*, the only case Aloha Johnson has cited

17  without explaining, is inapposite and involves no quit claim deeds. Further, Aloha Johnson stated

18  in her declaration that she had executed the Quitclaim Deed only to facilitate the refinance

19  transaction, not to gift any interest she may have had to Clyde Johnson; however, the Court need

20  not consider this extrinsic evidence to determine her intent because the Quitclaim Deed's

21  language is unambiguous. *See In re Snow*, 199 Fed. Appx. 609, 610-11 (9th Cir. 2006).

22  Specifically, under the Quitclaim Deed, Aloha Johnson "conveys and quit claims to Clyde B.

23  Johnson, married man as his separate estate." Dkt. 66-1, at 70. She transferred any interest she

24

1  may have had in the Eatonville Property to Clyde Johnson when she executed the Quitclaim

2  Deed.

3         Moreover, if Aloha Johnson, in fact, intended only to facilitate the refinance transaction

4  lacking understanding at the time that she may have had an interest in the Eatonville Property to

5  form the requisite intent to transfer any such interest to Clyde Johnson, then she would have

6  formed such an intent had she understood what was at stake because the intent to gift or

7  otherwise transfer interest in the Eatonville Property, as evidenced by the Quitclaim Deed's

8  unambiguous language, was required for the alleged refinance transaction. Similarly, if the Court

9  were to consider extrinsic evidence, such evidence would further support that Aloha Johnson

10 transferred any interest she may have had in the Eatonville Property to Clyde Johnson because

11 the real estate tax affidavit filed with the Quitclaim Deed states that the "explanation" for the

12 transaction was to "separate community property." *Id.*, at 72.

13        Finally, even if Aloha Johnson had any interest in the Eatonville Property when the IRS

14 assessed Clyde Johnson's liabilities in question, she has failed to show that the tax liabilities did

15 not constitute community debt subject to enforcement. *See Am. President Lines, Ltd. v.*

16 *Pederson*, C9-5109BHS, 2009 WL 2164408, at *3 (W.D.Wash.2009) (citing *Warren v.*

17 *Washington Trust Bank,* 19 Wash.App. (1978)) (a spouse contesting a community debt has the

18 burden of showing that the debt was not incurred with the intention or expectation, at the

19 inception of the transaction, on the part of the spouse that a material economic benefit would

20 accrue to the community) (internal quotations omitted).

21        Accordingly, the Court should conclude that Aloha Johnson has failed to controvert the

22 government's *prima facie* case that she had no interest in the Eatonville Property not subject to

23

24

enforcement when the IRS assessed Clyde Johnson's tax and related liabilities. As such, Aloha

Johnson is not entitled to judicial valuation and distribution.

**C. Plaintiff's motion for default judgments against Ms. Erin Johnson, Ms. Gina Campbell, and Alphabiotic**

On October 7, 2014, on the government's motions (Dkts. 33-34), the Clerk entered

defaults as to Ms. Erin Johnson and Ms. Gina Campbell, Clyde Johnson's alleged surviving

heirs, for failure to plead or otherwise defend (Dkts. 36-37). Similarly, on October 15, 2015, on

the government's motion (Dkt. 31), the Clerk entered a default as to Alphabiotic for failure to

plead or otherwise defend (Dkt. 38).

On October 21, 2014, the government filed motions for default judgments as to these

defendants. Dkts. 40-42. On October 24, 2014, the Court denied the government's motions

without prejudice for lack of supporting evidence. Dkts. 44-46.

Here, the government again moves the Court for default judgments against defendants

Ms. Erin Johnson, Ms. Gina Campbell, and Alphabiotic, arguing that, if the Court denies these

motions, the government will be unable to adequately protect its interests in the tax liens attached

to the Eatonville Property. Dkt. 66. More specifically, the government argues that, without

resolution of any purported interest Ms. Erin Johnson, Ms. Gina Campbell, and Alphabiotic may

have in the Eatonville Property, the title to the property will remain clouded. *Id.*

*1. Legal Standard*

Generally, a defendant must answer "within 21 days after being served with the summons

and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Entry of default is permitted if "a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed.

R. Civ. P. 55(a). After an entry of a default, a court may grant a default judgment on the merits

of the case. Fed. R. Civ. P. 55(b). Factors that may be considered by courts in exercising

1  discretion to enter a default judgment include the merits of plaintiff's substantive claim, *Eitel v.*

2  *McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), and the sufficiency of the allegations in the

3  complaint to support judgment, *Alan Neuman Productions, Inc.*, 862 F.2d 1388, 1392 (9th Cir.

4  1988). The Court should "establish the truth of any allegation by evidence." Fed. R. Civ. P.

5  55(b)(2)(C).

6      *2. Analysis*

7      The Court should grant the government's motions for default judgments as to Ms. Erin

8  Johnson, Ms. Gina Campbell, and Alphabiotic. The Court has concluded above that the

9  government can prevail on the merits of its substantive claim. The defaulting defendants have

10  failed to plead or otherwise defend, and the government's allegations support default judgments

11  against these defendants.

12      Accordingly, the Court should grant the government's motion for default judgments

13  against Ms. Erin Johnson, Ms. Gina Campbell, and Alphabiotic.

14                                    <u>CONCLUSION</u>

15      The Court should conclude that the record, taken as a whole, could not lead a rational

16  trier of fact to find for Aloha Johnson. Aloha Johnson has failed to controvert the government's

17  *prima facie* showing in support of its motion for a summary judgment. The government

18  possesses valid federal tax liens against Clyde Johnson, the validity of which Aloha Johnson has

19  not controverted. Nor has Aloha Johnson controverted the government's position that

20  Alphabiotic, the purported current title holder of the Eatonville Property, was Clyde Johnson's

21  nominee or alter ego. Accordingly, the government may enforce the liens in question against the

22  Eatonville Property.

23

24

1     Finally, Aloha Johnson has failed to show that she had any interest, or interest not subject

2 to community debt, in the property entitling her to judicial valuation or distribution. The Court

3 should decree a sale of the Eatonville Property to satisfy the tax liens in question.

4     Accordingly, it is hereby **ORDERED** that

5     The United States of America's Motion to Amend United States' Amended Complaint

6 (Dkt. 67) is **GRANTED**. The Clerk is directed to file the United States' Second Amended

7 Complaint (Dkt. 67-2).

8     The United States of America's Motion for Summary Judgment Against Aloha Johnson

9 (Dkt. 66) is **GRANTED**. The United States of America may foreclose its liens upon the

10 Eatonville Property, with the proceeds to be distributed to the United States of America to satisfy

11 Mr. Clyde Johnson's outstanding tax liabilities for the 1994-2003 tax years.

12     The United States of America's Motion for Default Judgment against Erin Johnson, Gina

13 Campbell, and Alphabiotic Life Center (Dkt. 66) is **GRANTED**.

14     The Clerk is directed to send uncertified copies of this Order to all counsel of record and

15 to any party appearing *pro se* at said party's last known address.

16     Dated this 30th day of March, 2015.

17

18

19     ROBERT J. BRYAN
       United States District Judge

20

21

22

23

24